Kenton L. Crowley, In Pro Per
40970 Alton Court
Temecula, CA 92591-6948
951 764 8281
crowlek@gmail.com

John A. Flores, In Pro Per
11211 Sepulveda Boulevard
Mission Hills, CA 91345.
818-365-9531
jfloresmd@hotmail.com

12-1-08

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Kenton L. Crowley, an individual, and John A. Flores, an individual<br><br>  Plaintiffs,<br><br>v.<br><br>EpiCept Corporation, and DOES 1 through 20<br><br>  Defendants. | Case No. 08-5850 (KJH)<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, AND RESCISSION OF CONTRACT**<br><br>**(DEMAND FOR JURY TRIAL)** |

Plaintiffs Kenton L. Crowley, an individual, and John A. Flores, an individual ("Plaintiffs") file this Complaint against the Defendant EpiCept Corporation, and allege the following:

## JURISDICTION AND VENUE

1. This is an action for several causes of action including breach of contract and fraud arising out of an agreement executed by the parties called the "Assignment Agreement" (hereinafter "the Agreement"). Because the Agreement contains confidentiality stamped on every page the Plaintiffs will not attach the Agreement to this Complaint until either the parties agree that it may be filed in the public documents or the Court grants a motion that the document be filed under seal.

2. According to the Agreement its terms are to be interpreted under New Jersey law. The Court's jurisdiction is founded in diversity 28 U.S.C. §§ 1332. The amount in controversy exceeds the sum or value of $75,000 and is between citizens of different states. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. §§ 1391(b). The Agreement vests jurisdiction with this Court and this District, the claims substantially arose in this District and the Defendant is located in this District, more specifically at Englewood Cliffs, New Jersey.

## PARTIES

3. Plaintiffs Dr. Kenton L. Crowley and Dr. John A. Flores are residents from two different counties of California and were residents at the time of the Agreement.

4. Dr. Kenton L. Crowley, a pharmacist, and Dr. John A. Flores, a physician, jointly invented and were owners of the inventions described in United States Patent No. 5,817,699, entitled "Process for the Preparation of Ketamine Ointment" issued October 6, 1998, and United States Patent No. 6,017,961, entitled "Ketamine and N-Butyl-P-Aminobezoate in PLO," issued January 25, 2000 (hereinafter "the Ketamine Ointment"). Both patents became the subject of the Agreement.

5. Dr. Crowley has acted on behalf of the Plaintiffs in all negotiations and interactions with the Defendant and represents the Plaintiffs in submitting this claim. He signs this pleading on his own behalf, on behalf of Dr. Flores' and on behalf of the Plaintiffs' joint interests. Dr. Flores has authorized the filing and is submitting his signature page as a separate document.

6. Dr. Crowley anticipates the appearance of local and out of state legal representation in this matter.

7. Defendant EpiCept Corporation (EpiCept) is a corporation incorporated under the laws of the State of Delaware.

8. EpiCept's principal place of business is 270 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.

9. Sometime in 2005 EpiCept filed a registration statement with the Securities and Exchange Commission (SEC) for a proposed initial public offering of its common stock.

10. Plaintiffs are without knowledge concerning the legal impacts of any mergers or other corporate activities that occurred since the execution of the Agreement and reserve their rights to add any and all successors in interest to that entity which executed the Agreement should such be necessary.

11. Plaintiffs are informed and believe, and upon such information and belief allege, that the true name and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 20, inclusive, are presently unknown to them and who therefore sue said Doe Defendants by such fictitious name. Plaintiffs will seek leave of this Court to amend this Complaint to assert the true name and capacities of the Doe Defendants when they ascertain them. Plaintiffs are informed and believe, and thereon allege, that the Doe Defendants may be legally responsible in some manner for the events and happenings herein referred to, and may be liable for the damages alleged either in their own rights or as agents or assignees or successor in interest to the named Defendant. Defendants when used collectively will refer to these Doe

3

Defendants where relevant.

## FACTUAL ALLEGATIONS

12. Both patents provide a topical treatment for neuropathic and other forms of pain and other diseases such as Parkinsons Disease.

13. Prior to the Plaintiffs' patents, the only commercially available form of Ketamine was an injection for intravenous, subcutaneous or intramuscular routes.

14. Such applications resulted in significant side effects manifested as sedative and cognitive impairment.

15. Preliminary studies demonstrated the patents as highly effective in the treatment of neuropathic and other forms of pain within minutes of application, without these side effects and enduring for hours to days after a single application.

16. There is a substantial and developing market for products that can treat pain including neuropathic pain.

17. EpiCept presents itself to the public and to its investors as a specialty pharmaceutical company focused on developing and marketing cancer and pain treatment.

18. It is understood in the scientific and research community and the marketplace for patents that there is a window of opportunity for bringing a product to market after patent approval and that the window is limited to a "commercially and scientifically reasonable time" for conducting those tests necessary for FDA approval, for obtaining FDA approval and for developing and marketing patents.

19. EpiCept approached Dr. Crowley advising him that based upon their review of the data presented in Plaintiffs' patents that the patents were critical to their company's intellectual portfolio and business plan.

20. EpiCept also approached Dr. Crowley to engage his consultant services as a pharmacist consultant based upon his clinical knowledge, marketing and R&D expertise and in bridging

R&D with marketing strategies.

21. EpiCept induced Plaintiffs to enter into the Agreement to assign their interests in their patents, and induced Dr. Crowley to enter into a related consultant agreement, by advising Plaintiffs that EpiCept was extremely interested in developing and marketing the patents and that the Plaintiffs would thus share in the royalties.

22. EpiCept induced Plaintiffs to assign their interests and enter into the Agreement by advising that Epicept had the research facilities, resources, business plan and network of contacts to develop the patents.

23. EpiCept further induced Plaintiffs to enter into the Agreement by advising that it would use this combination of resources to conduct those additional clinical studies needed on the patents before application to the FDA for its approval could be sought.

24. That such resources would permit EpiCept to complete the process for FDA approval and then bring the patents to market which would result in royalties.

25. On December 1, 2000, the Plaintiffs induced by, and in reliance on these representations, entered into a letter of intent and the Agreement which expressly incorporated these promises in return for an assignment of the Plaintiffs' patents. Documents to be filed under seal.

26. The Agreement expressly provided that EpiCept would obtain FDA approval for the patents, and then after obtaining FDA approval, would market the patents.

27. The Agreement provided that EpiCept would pay the Plaintiffs royalties in the amount of 2% of Net Sales.

28. EpiCept also agreed to pay a total of $300,000.00 to both Plaintiffs and pay Dr. Crowley for his consulting services.

29. After the consummation of the Agreement, EpiCept announced to its investors and shareholders that Dr. Crowley had joined the company as a new inventor and that he had assigned "important patents that support and expand our neuropathic pain program."

30. EpiCept also announced that Dr. Crowley's inventions which "utilizes ketamine in combination with butamben" "demonstrated dramatic and long lasting relief in numerous subsets of neuropathy patients" and "complemented (EpiCept's) amitriptyline/ketamine combination" for which it already had patent rights.

31. EpiCept also announced that "We envision this product as complementary to our amitriptyline/ketamine combination."

32. In furtherance of this "vision" the Agreement expressly committed EpiCept to :

> "[U]se commercially and scientifically reasonable efforts to (i) file an Investigational New Drug Application, or its equivalent, with the United States Food and Drug Administration ('FDA') directed to a Patented Product within two (2) years of the Effective Date hereof, or (ii) file a New Drug Application, or its equivalent, with the FDA directed to a Patented Product within four (4) years of the Effective Date hereof…".

33. Plaintiffs allege on information and belief that to date EpiCept has not made those "commercially or scientifically reasonable efforts."

34. Among its failures, EpiCept did not file the Investigational New Drug Application ("IND") with the FDA which it agreed to do by December 1, 2002.

35. EpiCept did not file a New Drug Application ("NDA") with the FDA which it agreed to do by December 1, 2004.

36. EpiCept did not renew Dr. Crowley's contract.

37. After Dr. Crowley's departure, and a passage of time in which the Plaintiffs believed that they should have heard of those commercially and scientific reasonable steps EpiCept was taking to develop the patents, Dr. Crowley made inquiries as to the status.

38. Plaintiffs provided notice to the Defendant of its default under the Agreement and that EpiCept's default triggered the termination clause of the Agreement.

39. Defendant did not comply with the termination clause and did not re-assign the patents back to the Plaintiffs.

6

40. EpiCept re-assured the Plaintiffs that it was moving along in its development and committed itself to "do whatever is necessary to file an IND and later an NDA directed at a patented product."

41. To Dr. Crowley and Dr. Flores' knowledge and belief, EpiCept has not yet conducted the required clinical studies or any studies which it agreed to do that were necessary to obtain FDA approval even after providing these additional assurances.

42. Based upon their pre-litigation investigation Plaintiffs are of the opinion and belief that EpiCept has made no effort at all to advance the patents as expressly and impliedly agreed.

43. Plaintiffs are of the opinion and belief that EpiCept has "shelved" the patents and focused its efforts on developing *other* Ketamine products to Dr. Crowley and Dr. Flores' direct detriment.

44. Plaintiffs are now of the opinion and belief that EpiCept intended by the Agreement and its limited engagement of Dr. Crowley to prevent Plaintiffs from developing their patents, or from assigning the patents to a competitor to allow EpiCept to develop alternative patents in its pipeline.

45. Plaintiffs are now of the opinion and belief that EpiCept intended to acquire the rights to Plaintiffs' patents in the development and production of these *other* Ketamine products in the EpiCept pipeline which would have infringed upon the Plaintiffs' patents.

46. Dr. Crowley and Dr. Flores have been significantly damaged as the result of EpiCept's failure to fulfill its express and implied contractual obligations as set forth above.

47. EpiCept's actions have resulted in the erosion of the patents' value, both at missed retail market sales (royalty payments) and the substantial interruption of that period of time necessary to developing a patent within its life span.

48. EpiCept's *lack of* commercially or scientifically reasonable efforts in a period of almost six years has allowed EpiCept and other drug companies to market alternative products that have reduced or will reduce the market impact of the patents.

49. Instead of developing Plaintiffs intellectual property contained in their patents they used it to develop and market competitive products for which the Plaintiffs would receive no royalties or compensation.

50. Plaintiffs reserve the right to amend this Complaint and add additional causes of actions or to amend the allegations as their investigation and discovery develops.

51. Plaintiffs also reserve the right to amend this Complaint to add those parties found necessary to the action.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against EpiCept and Doe Defendants)

52. Plaintiffs incorporate by reference Paragraphs 1 though 51 above as if set forth in full.

53. As more fully described above, Plaintiffs entered into the Agreement assigning their patents to enable EpiCept to take those steps necessary to develop and market the patents including *inter alia* conducting those clinical studies necessary to obtaining FDA approval, applying for and obtaining FDA approval, and committing the resources and business efforts to marketing patents.

54. The Agreement required EpiCept to take these steps or to terminate the Agreement and re-assign the patents back to the Plaintiffs.

55. On information and belief, within the last six years EpiCept has failed to do any of the above *inter alia*.

56. EpiCept failed to make commercially or scientifically reasonable efforts to market the patents.

57. EpiCept failed to re-assign the patents back to the Plaintiffs upon notice of default and termination.

58. The acts and omissions set forth above constituted material breaches of the Agreement.

59. Plaintiffs performed or satisfied conditions of the Agreement, or Defendants' actions excused continued performance.

60. As a result of Defendants' actions, Plaintiffs have suffered damages, and will continue to suffer damages, in an amount that is yet to be determined.

61. Defendant(s) has (have) received, and will continue to receive the benefit of its actions including gains, profits, advantages and benefits resulting from its "success" in keeping the Plaintiffs from developing their patents or assigning their interests to some other company, in amounts that have yet to be determined.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing against EpiCept and Doe Defendants)

62. Plaintiffs incorporate by reference Paragraphs 1 through 51, 53-57 above, as if set forth in full.

63. The Agreement contained express and implied covenants that EpiCept would develop and market the patents that were assigned to it in good faith to produce royalty income.

64. Under New Jersey law, EpiCept as the exclusive holder of the patents had an implied obligation to use reasonable efforts to exploit develop the patents and bring profits and revenues into existence.

65. The acts and omissions set forth above constituted material breaches of this implied condition.

66. Defendants' withholding from Plaintiffs of its intention not to seriously develop the patents, and its continued assurances contrary to its failures, with knowledge that the Plaintiffs had valuable patents that they could develop or assign to another company constituted breaches of the implied covenants of dealing in good faith.

67. As a result of Defendants' actions, Plaintiffs have suffered damages, and will continue to suffer damages, in an amount that is yet to be determined.

68. Defendant(s) has (have) received, and will continue to receive the benefit of its actions including gains, profits, advantages and benefits resulting from its "success" in developing other products and keeping Plaintiffs' patents off the market during a time when it was feasible to develop the

patent given its expiration date, and keeping the Plaintiffs from developing their patents, or assigning their interests to some other company, in amounts that have yet to be determined.

## THIRD CLAIM FOR RELIEF

### (Fraud)

69. Plaintiffs incorporate by reference paragraphs 1 through 51 above, as if set forth in full.

70. At the time of the execution of the assignment documents with Dr. Crowley and Dr. Flores Epicept including the Agreement, EpiCept knew that it had no intention of meeting its contractual obligations of developing Plaintiffs' patents, including obtaining FDA approval.

71. At the time that the Plaintiffs provided notice of default and the operation of the termination clause Epicept knew that it had no intention of meeting its contractual obligations of developing Plaintiffs' patents, including obtaining FDA approval.

72. Plaintiffs are now of the opinion and belief that EpiCept intended by the Agreement and its limited engagement of Dr. Crowley to prevent Plaintiffs from developing their patents, or from assigning the patents to a competitor to allow EpiCept to develop alternative patents in its pipeline.

73. Plaintiffs are now of the opinion and belief that EpiCept intended to acquire the rights to Plaintiffs' patent in the development and production of these *other* Ketamine products in the EpiCept pipeline which would have infringed upon the Plaintiffs' patents.

74. Instead of developing Plaintiffs intellectual property contained in their patents they used it to develop and market competitive products for which the Plaintiffs would receive no royalties nor compensation.

75. EpiCept's original representations of its intention to comply and its continued assurances of compliance with the Agreement were false and EpiCept knew such statements were false and intended them to be false to induce Plaintiffs to assign their patents and to rely on false

10

assurances of development.

76. Plaintiffs reasonably relied to their detriment on EpiCept's misrepresentations and concealment by executing the Agreement.

77. Plaintiffs reasonably relied to their detriment on EpiCept's continued false assurances and concealment by relying on its assurances of development.

78. As a result of Defendant's actions, Plaintiffs have suffered damages, and will continue to suffer damages, in an amount that is yet to be determined.

79. Defendant has received, and will continue to receive the benefit of its wrongful actions including wrongful gains, profits, advantages and benefits resulting from its "success" in developing other products and keeping Plaintiffs' patents off the market and keeping the Plaintiffs from developing their patents or assigning the patents.

80. EpiCept committed such acts willfully and recklessly in wanton disregard of Plaintiffs' rights.

81. Plaintiffs are entitled to punitive damages and an order disgorging the Defendants of profits or royalties derived from the use of Plaintiffs' patents to market others.

## **FOURTH CLAIM FOR RELIEF**

### (Rescission)

82. Plaintiffs incorporate by reference Paragraphs 1 though 51, and Par. 70 through 80 as if set forth in full.

83. Alternatively Plaintiffs seek to rescind the Agreement based upon the acts and omissions set forth above.

84. Such acts and omissions include *inter alia*:

85. EpiCept failed to comply with any deadline to obtain FDA approval and has not acted scientifically or commercially reasonably in failing to do so.

86. At the time of the execution of the assignment documents with Dr. Crowley and Dr.

11

Flores Epicept knew that it had no intention of meeting its contractual obligations of developing the patents, including obtaining FDA approval.

87. At the time that the Plaintiffs provided notice of default and the operation of the termination clause Epicept knew when it provided assurances of compliance that it had no intention of meeting its contractual obligations of developing the patents, including obtaining FDA approval.

88. EpiCept intended by the Agreement and its limited engagement of Dr. Crowley to prevent Plaintiffs from developing their patents, or from assigning the patents to a competitor to allow EpiCept to develop alternative patents in its pipeline.

89. EpiCept intended to acquire the rights to Plaintiffs' patent in the development and production of these *other* Ketamine products in the EpiCept pipeline which would have infringed upon the Plaintiffs' patents.

90. Instead of developing Plaintiffs' intellectual property contained in their patents, EpiCept used it to develop competitive products for which the Plaintiffs would receive no royalties or compensation.

91. These acts and omissions allow the Plaintiffs to rescind the Agreement, to obtain a return of their patents and concurrently receive damages for the loss of the patents during a time when they could be developed and other relief.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for relief as follows:**

1. **On the First Claim for Relief,**
   a. For damages according to proof;
   b. For defendant's profits and gains according to proof;
   c. For return of the patents as set forth in the Agreement;
   d. For costs of suit and attorneys fees if permitted under NJ law; and

e   For such further relief as the Court deems just and proper.

2. **On the Second Claim for Relief,**

    a.  For damages according to proof;

    b.  For defendant's profits and gains according to proof;

    c.  For return of the patents as set forth in the Agreement;

    d.  For costs of suit and attorneys fees if permitted under NJ law; and

    e.  For such further relief as the Court deems just and proper.

3. **On the Third Claim for Relief,**

    a.  For damages according to proof;

    b.  For defendants' profits and gains according to proof;

    c.  For costs of suit; and

    d.  For punitive damages in an amount sufficient to punish and deter Defendant from any recurrence of its unlawful conduct and an order of disgorgement;

    e.  For such further relief as the Court deems just and proper

4. **On the Fourth Claim for Relief,**

    a.  For "rescission" or termination of the Assignment;

    b.  For order enjoining the Defendant, its agents, and all persons acting in concert with the Defendant to re assign all patent rights.

    c.  For costs and attorneys' fees if allowed;

    d.  For damages as permitted in the Agreement; and

    e   For such further relief as the Court deems just and proper

**Signature Page to Complaint:**

DATED: November 25, 2008    Kenton Crowley

_____

John Flores

_____

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of this action.

DATED: November 25, 2008    Kenton Crowley

_____

John Flores

_____

14

Signature Page 2 to Complaint:

DATED:      November 25, 2008         John Flores

                                      */s/ John Flores*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of this action.

DATED:      November 25, 2008         John Flores

                                      */s/ John Flores*

**Signature Page to Complaint:**

DATED: November 25, 2008

Kenton Crowley

*/s/ Kenton Crowley/*

John Flores

*/s/ Kenton Crowley/*

By:
Kenton Crowley who by his signature avers by affixing his signature that he is authorized to do so on behalf of John Flores

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of this action.

DATED: November 25, 2008

Kenton Crowley

*/s/ Kenton Crowley/*

John Flores

*/s/ Kenton Crowley/*

By:
Kenton Crowley who by his signature avers by affixing his signature that he is authorized to do so on behalf of John Flores

**Signature Page 2 to Complaint:**

DATED: November 25, 2008        John Flores

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of this action.

DATED: November 25, 2008        John Flores