1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   KENTON L. CROWLEY, *et al*.,          Case No.  9-cv-641-L (BGS)

                              Plaintiffs,   **ORDER DENYING MOTION**
12                                          **FOR NEW TRIAL [DOC. 188]**

13        v.

14   EPICEPT CORPORATION,

15                              Defendant.

16

17

18        Pending before the Court is Plaintiffs' motion for new trial pursuant to FED R.

19   CIV. P. 59.  The Court finds the motion suitable for resolution on the papers and

20   without a hearing.  For the following reasons, the motion is **DENIED**.

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1  **I.   BACKGROUND**

2      In March 2015, this Court conducted a jury trial in this case.  On March 23,

3  2015, the jury returned a verdict in favor of the Defendant.  On March 25, 2015, in

4  light of the jury verdict, the Court entered judgment on behalf of Defendant with

5  respect to all three claims at issue: breach of contract, breach of the implied covenant

6  of good faith and fair dealing, and fraud.  On April 22, 2015, Plaintiffs filed the

7  instant motion for a new trial, arguing that the trial was not fair and that they are

8  entitled to a new trial.  (Mot. New Trial 1-7, ECF No. 188).  The motion has been

9  fully briefed.  (Opp'n, ECF No. 192; Reply, ECF No. 194).

10

11  **II.   LEGAL STANDARD**

12      Federal Rule of Civil Procedure 59 permits the Court to alter or amend a

13  judgment, or order a new trial.  *See* FED. R. CIV. P. 59(a), (e).  "Rule 59 does not

14  specify the grounds on which a motion for a new trial may be granted."  *Molski v.*

15  *M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir.2007) (quotation omitted).  The grounds

16  on which such motions have been granted include "claims that the verdict is against

17  the weight of the evidence, that the damages are excessive, or that, for other reasons,

18  the trial was not fair to the party moving."  *Id.* (quotation omitted).  "[T]he trial court

19  may grant a new trial only if the verdict is contrary to the clear weight of the

20  evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of

21  justice."  *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n.

22  15 (9th Cir. 2000).  "Upon the Rule 59 motion of the party against whom a verdict

23  has been returned, the district court has the duty to weigh the evidence as the court

24  saw it, and to set aside the verdict of the jury, even though supported by substantial

25  evidence, where, in the court's conscientious opinion, the verdict is contrary to the

26  clear weight of the evidence."  *Molski* 481 F.3d at 729 (quotation omitted).  With

27  respect to evidentiary rulings, "[a] new trial is only warranted when an erroneous

28  evidentiary ruling substantially prejudiced a party."  *Harper v. City of Los*

1   *Angeles,* 533 F.3d 1010, 1030 (9th Cir.2008) (quotation omitted).

2

3   **III.    DISCUSSION**

4          **A.      Plaintiffs Were Not Prejudiced By Allegedly Belated Defense**

5          Plaintiffs first argue that they are entitled to a new trial because Defendant

6   "introduced at trial, new issues not included in the final pre-trial statement approved

7   by the Court." (Mot. New Trial 2.)  Specifically, Plaintiffs contend that none of the

8   pretrial orders indicated that the issues to be tried included "1) that the Doctors had

9   waived performance due to their failure to strictly comply with Par. 10.2.3 concerning

10  a 90[-]day notice of cure; and 2) that the doctors were not entitled to return of their

11  Patents based on this failure." (*Id.* 3.)   According to Plaintiffs, "Defendants

12  substantially relied on this 'defense' throughout trial, in argument[,] and cross

13  examination." (*Id.*)  Plaintiffs suggest they attempted to "rebut this new defense by

14  introducing substantial evidence that [Defendant] had waived compliance with this

15  paragraph, including failing to respond to repeated notices of default for several

16  years." (*Id.*)  Essentially, Plaintiffs suggest that the "sole determinant" of the jury's

17  verdict was that the Plaintiffs failed to perform the conditions required of them "per

18  the Agreement set forth in Par. 10.2.3 i.e. they failed to provide EpiCept the 90 day

19  notice to cure set [sic] as set forth in this section" and that this is unfair because they

20  were "sandbagged" by this waiver defense.  (*Id.* 9.)  The Court will refer to this issue

21  as the "waiver issue."

22         Defendant maintains that there was no surprise because "[a]s early as 2011,

23  one of [Defendant's] primary defenses has been that plaintiffs could not establish a

24  breach of contract because they failed to do what was required of them under the

25  contract." (Opp'n 3.)  According to Defendant, this issue was raised in Defendant's

26  motion for summary judgment in 2011, as well as all four pretrial orders.  As

27  explained below, Defendant is correct, but this does not resolve the matter.

28         In the fourth and final pretrial order, which the parties jointly submitted, the

1
2
3
4
5
6
7
8
9
10
11

parties agreed that one of the issues to be litigated at trial was "Were Plaintiffs required to inform EpiCept that Dr. Flores used the patented formula to treat burn victims?" (Final Pretrial Order 4, ECF No. 167.)  In addition, an agreed upon legal issue to be determined was whether the Plaintiffs materially breached the agreement by not informing Defendant of Dr. Flores' use of the patented formula as treatment for first and second degree burns. (*Id.* 11.)  The court will refer to this issue as the "improvement issue."  In light of the foregoing, it is clear that the Plaintiffs knew Defendant would litigate the "improvement issue" at trial.  However, as Plaintiffs point out in their reply, they do not dispute that they knew Defendants would introduce the "improvement issue" at trial. (Reply 2, 8-9.)  Instead, Plaintiffs reiterate their position that the "waiver issue" was first raised at trial. (*Id.* 8.)

12
13
14
15
16
17
18
19
20

As an initial matter, the Court agrees that Defendant's opposition fails to specifically address the "waiver issue."  Nonetheless, Plaintiffs' position is untenable. Plaintiffs have provided no proof that the jury based their decision on the 90-day notice issue at all, let alone as the "sole determinant" of their verdict.  According to Plaintiffs' attorney, certain jurors reported after the verdict that they "were persuaded to go with [D]efendant and not return the patents to the doctor based on Par. 10.2.3 as identified in Par. L in the verdict."  (Larson Decl. ¶ 24, ECF No. 189.)  However, a review of the verdict form reveals that the 90-day notice issue did not factor into the jury's disposition of the case.

21
22

The jury's verdict form shows that the jury decided that Dr. Flores' use of NP-2 on burn victims was a material breach of the contract:

23
24
25
26
27
28

1

**LIABILITY**

**I.   Breach of Contract claim**

A.   Was Dr. Flores' use of NP-2 on burns a material breach of the
contract?

YES____✓____NO_____

If you answered YES, skip to Question E.  If you answered NO, answer
Question B.

(Jury Verdict Form ¶ A, ECF No. 180).  The Court notes that neither party objected to Paragraph A of the verdict form.  Defendant was able to prove that Plaintiffs materially breached the Agreement; therefore Plaintiffs' breach of contract claim failed because one of the elements of a breach of contract claim is performance by plaintiffs of their obligations under the contract.  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 566 (D.N.J. 2003).  That is why the jury verdict form instructed the jurors to skip over the remainder of the questions regarding Defendant's liability for a purported breach of contract.  That is also why, in Paragraph L of the jury verdict form, the jurors were instructed to refuse a return of the patents if Plaintiffs could not prove a breach of contract claim:

**RETURN OF THE PATENTS**

L.   If you answered YES to Question D above, and if you find that Dr.
Flores and Dr. Crowley satisfied section 10.2.3, then Plaintiffs are
entitled to a return of the patents.  If you find the Plaintiffs waived their
right to return of the patents, they are not entitled to return of their
patents.  Do you award the return of Dr. Flores and Dr. Crowley's
patents to them by EpiCept?

YES_____NO____✓____

(Jury Verdict Form ¶ L.)  If the jury had answered YES to Question D, they would have found that Plaintiffs proved their breach of contract claim.  However, the jury was instructed to skip over Question D because Plaintiffs materially breached the

– 5 –

9cv641

1   contract.  Because the jury did not answer YES to Question D (contractual liability),

2   Plaintiffs were unable to prove they were entitled to a return of their patents.  (*Id.*

3   ("If you answered YES to Question D above, and if you find that Dr. Flores and Dr.

4   Crowley satisfied section 10.2.3, then Plaintiffs are entitled to a return of the

5   patents.").)  So, contrary to Plaintiffs' suggestion, it appears that the jury did base its

6   decision on Dr. Flores' undisclosed use of NP-2.

7          Assuming, as Plaintiffs' counsel contends, some or all jurors refused to award

8   return of the patents because the Plaintiffs failed to satisfy Paragraph 10.2.3, the

9   Plaintiffs have failed to meet their burden to show they are entitled to a new trial.

10   There were two prerequisites for Plaintiffs to prove they were entitled to return of

11   the patents: (1) Defendant's breached the contract and (2) Plaintiffs complied with

12   section 10.2.3.  Once the jury decided that Plaintiffs materially breached the contract,

13   Plaintiffs' contract claim failed, and the jury could not return the patents to Plaintiffs.

14   So, even if some jurors based their decision on the "waiver issue," the Plaintiffs have

15   failed to show that this decision was "contrary to the clear weight of the evidence."

16   *See Molski*, 481 F.3d at 729.  In light of the foregoing, the motion on this ground is

17   **DENIED**.

18          **B.      The Court Did Not Abuse Its Discretion By Refusing to Give**

19          **Plaintiffs' Proposed Jury Instructions**

20          Plaintiffs' next argument is that the Court failed to give three jury instructions

21   which were material in defending against Defendant's new "waiver issue" at trial.

22   (Mot. New Trial 2-3, 4, 10.)  Plaintiffs suggest that their proposed jury instructions

23   regarding (1) Defendant's waiver of Doctors' strict compliance with Par. 10.2.3, (2)

24   "adoptive admissions, ie [sic] by failing to respond to the Doctors' declaration of

25   default they had conceded default, and (3) material breach being equally applicable

26   to the Defendants, "i.e. that as with Defendant, the jury could not find that the

27   Plaintiffs had not performed under the contract, unless they found that the Doctors'

28   breach was material."  (*Id.* 2-3.)

1    Defendant maintains that Plaintiffs failed to timely object to the jury
2    instructions on the record.  (Opp'n 6.)  The Court agrees.

3    Under FED. R. CIV. P. 51(c)(1), "a party who objects to an instruction or the
4    failure to give an instruction must do so *on the record*, stating distinctly the matter
5    objected to and the grounds for the objection."  Such objection is timely if "(A) a
6    party objects at the opportunity provided under Rule 51(b)(2); or (B) a party was not
7    informed of an instruction or action on a request before that opportunity to object,
8    and the party objects promptly after learning that the instruction or request will be,
9    or has been, given or refused." FED. R. CIV. P. 51(c)(2).  "If a party does not properly
10   object to jury instructions before the district court, [a court] may only consider 'a
11   plain error in the instructions that ... affects substantial rights.'" *Hunter v. Cnty. Of
12   Sacramento*, 652 F.3d 1225, 1230 (9th Cir. 2011) (quoting FED. R. CIV. P. 51(d)(2)).
13   To establish plain error in the context of civil jury instructions, the objecting party
14   must show (1) there was an error; (2) the error was obvious; and (3) the error affected
15   substantial rights.  *C.B. v. City of Sonora*, 769 F.3d 1005, 1018-19 (9th Cir. 2014).

16   Here, Plaintiffs failed to object to the Court's refusal to give these jury
17   instructions.  Plaintiffs fail to address this threshold issue, and instead suggest
18   without any substantiation that Plaintiffs "objected vociferously on behalf of their
19   right to have the Court instruct the jury on the issues of waiver, and material breach."
20   (Reply 3.)  Plaintiffs do not point to any evidence that these objections were made
21   on the record.  (*Id*.)  Instead they point to supplemental jury instructions submitted
22   as evidence of their objection and contend that Plaintiffs' attorney "argued for a
23   modification of the New Jersey instruction on material breach" at some point
24   "[d]uring oral arguments." (*Id.*)  A request for a jury instruction, alone, is not enough
25   to preserve the right of appeal for failure to give the instruction.  *See Glover v. BIC
26   Corp.*, 6 F.3d 1318, 1325-26 (9th Cir. 1993) (explaining that an objection must be
27   made because a request for a jury instruction is not enough to preserve the right to
28   appeal the trial court's failure to give the instruction).  Thus, by their own admission,

1   Plaintiffs never properly objected regarding the omitted waiver and adoptive
2   admissions instructions on the record.  Further, suggesting that Plaintiffs somehow
3   formally objected to the omission of their proposed material breach instruction
4   "during oral arguments" is not enough to establish an objection.  Plaintiffs fail to cite
5   to any portion of the record in making this assertion.  The Court can deny Plaintiffs'
6   motion on this basis alone.

7           Even assuming the Court were to allow Plaintiffs' objections now, it would
8   still find them to be substantively weak and the Court's alleged errors insufficiently
9   prejudicial to warrant a new trial.  *See Huff v. Sheahan,* 493 F.3d 893, 899 (7th
10  Cir.2007) ("[W]e shall reverse when the instructions misstate the law or fail to
11  convey the relevant legal principles in full *and when those shortcomings confuse or*
12  *mislead the jury and prejudice the objecting litigant."* (internal quotations and
13  citations omitted) (emphasis added); *Reed v. Hoy,* 909 F.2d 324, 326 (9th
14  Cir.1989) ("We review jury instructions to determine whether, taken as a whole,
15  they mislead the jury or state the law incorrectly to the prejudice of the objecting
16  party."); *Nava v. Seadler,* 2011 WL 6936341 at *3 (N.D. Cal. Dec.30, 2011) ("Even
17  assuming that the jury instruction as given was incomplete and therefore incorrect,
18  the court finds that a new trial is not warranted because the error was more probably
19  than not harmless.").  As explained above, the jury reached its verdict without
20  considering the "waiver issue" surrounding Par. 10.2.3 of the Agreement.  Because
21  Plaintiffs' argument is that it could not properly litigate this issue, in part, because
22  of the Court's failure to provide these jury instructions, it necessarily fails.  Once the
23  jury found that Plaintiffs' breach of contract claim failed, the "waiver issue"
24  essentially became moot.

25          Plaintiffs fail to articulate any other grounds on which their objections could
26  be deemed appropriate.  Although Plaintiffs fail to raise the issue, the Court notes
27  that Plaintiffs could have attempted to apply the narrow exception from *Hunter* and
28  *City of Sonora* here.  However, Plaintiffs could not prove the third element of the

1  plain error test, that the purported error affected substantial rights.  As explained in

2  detail above, Plaintiffs purported inability to properly litigate the "waiver issue" is

3  rendered irrelevant by the jury's finding that Plaintiffs' breach of contract claim

4  failed.  In light of the foregoing, the motion on this ground is **DENIED.**

5      **C.      The Court's Response to the Jurors' Question Was Sufficient**

6      Plaintiffs next challenge this Court's response to the jurors' question

7  submitted during their deliberations.  According to Plaintiffs, "[t]he Trial Court did

8  not sufficiently respond to the Juror's [sic] question concerning the verdict form and

9  the quick verdict suggests that the jury as the result of the court's instruction limited

10 its review of the evidence to Par. 10 of the Agreement."  (Reply 2.)

11     Defendant responds by suggesting that this objection was also waived because

12 Plaintiffs did not object on the record.  Further, Defendant argues that "the Court's

13 response . . . that the jury would have to answer the questions for itself" was within

14 the "wide discretion" of the Court, citing *Arizona v. Johnson*, 351 F.3d 988, 994 (9th

15 Cir. 2003) (A trial judge is the "governor of the trial" and enjoys "wide discretion in

16 the matter of charging the jury.").  The Court agrees with Defendant.

17     As explained above, this objection was waived by Plaintiffs as they never

18 made it on the record.  Specifically, after Plaintiffs became aware that this Court was

19 not going to provide either of their proposed responses to the question, Plaintiffs

20 never made any objection on the record.  Plaintiffs' reply fails to address this issue

21 as it again fails to provide any evidence, or even allege, that Plaintiffs objected on

22 the record.

23     Even assuming that the objection was timely, Plaintiffs fail to show that this

24 Court abused its discretion.  After the jury retired for deliberations, the foreperson

25 submitted the following question to the Court:

26     Was the burn treatment (patient) before or after the agreement was
       entered?  Does it matter?  Specifically to plaintiffs failure to do what
27     contract required.

28

(Jury Exhibit 1, ECF No. 178-1.)  From the question, it is apparent that the jurors wanted to know whether the timing of Dr. Flores' alleged improvement (use on burn victims) of NP-2 affected the Plaintiffs' obligations under the Agreement.  Under the Agreement, it appears that Plaintiffs were obligated to report any improvements in writing whether they were discovered or used *before or after* the agreement was entered.  (Agreement, ¶ 2.)  If it was conceived before the effective date of the contract, then it was to be disclosed within ten days of the effective date.  (*Id.*)  If it was conceived after the effective date, it was to be disclosed within 30 days of conception.  (*Id.*)  Because there was no evidence presented that Plaintiffs provided written notice of the alleged improvement *at any time*, the Court felt that the timing of the burn treatment did not matter with respect to "plaintiffs failure to do what [the] contract required."  However, the jury instructions explicitly explained that it was within the province of the jury to interpret the provisions of the contract.  Rather than answering the jury's question in too much detail, which might invade the province of the jury, the Court elected to provide the following response:

> In response to your questions, there are factual questions that must be determined by the jury.  You must determine the facts in this case based on the evidence presented.  The jury should review the contractual provisions in addition to all of the other evidence and jury instructions in arriving at a verdict.

(Jury Exhibit 2.)  Essentially, the Court redirected the jurors' attention to the Agreement, the evidence presented during trial, and the jury instructions.  This was an accurate statement of the law as well as the jurors' responsibilities, and was thus appropriate and not an abuse of discretion.

In addition, contrary to Plaintiffs' suggestion, this jury question does not show that "the concern the Doctors had in arguing for instructions to be provided on breach and waiver from Plaintiffs' perspective seemed to be coming to fruition."  (Reply 5.)  This question, on its face, has nothing to do with the Plaintiffs proposed and omitted jury instructions.  The definition of material breach was provided in the jury

instructions.  (Jury Instructions 4-5, ECF No. 179.)  If the jurors had a question regarding the definition of a material breach, they would have asked what the definition of material breach was.  If the jurors did not understand that either party can materially breach a contract, despite the jury instructions and the two week trial where both parties presented evidence of the other parties' breach, they could have asked questions to clarify this issue.  They chose not to.  The Court did not, and will not now, accept Plaintiffs' invitation to speculate as the jury's motivation for asking the questions that it did.

Finally, Plaintiffs imply that because the jury "came to their decision fairly quickly," the Court's answer to the jurors' question was somehow improper.  As explained above, however, the jury based their decision on the fact that Plaintiffs could not establish a breach of contract claim.  Once they came to that conclusion, the jury had only to evaluate the breach of good faith and fraud claims.  Plaintiffs present no evidence or argument as to why the jury could not have appropriately fulfilled its duty despite coming to the decision "fairly quickly."  In light of the foregoing, the motion on this ground is **DENIED.**

### D.    Defendant Presented Evidence that Plaintiffs' Breach Was Material

Plaintiffs next argue that Defendants failed to present *any* evidence that Dr. Flores' use of NP-2 on burn patients constituted a material breach.  (Mot. New Trial 3.)  The Plaintiffs argument, in its entirety, is as follows:  "The Defendants presented no evidence that Dr. Flores' use was a material breach to the Agreement."  (*Id.* 5.)

Defendant suggests that Plaintiffs completely ignore "undisputed testimony at trial of both Dr. Crowley and Mr. Golikov."  (Opp'n 2 n. 1.)  According to Defendant, each testified that the improvements paragraph was an important provision to the parties and Mr. Golikov testified that Defendant would not have entered into the Agreement without rights to all improvements.  (*Id.*)

Under New Jersey law, a breach is material if it affects the purpose of the contract in an important or vital way.  Here, significant evidence was presented

1   regarding the parties intentions when entering into the Assignment Agreement. First
2   and foremost, Mr. Golikov testified that the improvements clauses in the agreement
3   were important to Defendant and that Defendant would not have entered into the
4   agreement without those provisions. Further, both Dr. Crowley and Mr. Golikov
5   testified about the large potential market and applicability for NP-2 and how it was
6   an important part of the deal for Defendant to receive all rights to NP-2. Dr. Crowley
7   testified that Defendant told Plaintiffs during the negotiations of the Assignment
8   Agreement that Defendant was in the process of obtaining all intellectual property
9   on topical ketamine to further their goal to commercialize NP-2. Dr. Crowley also
10  testified that, during negotiations, Defendant was impressed with the large number
11  of applications NP-2 had and thought that it had more clinical applications than the
12  successful pain drug Lidoderm. Mr. Golikov also testified at length how achieving
13  an assignment of all rights to NP-2, as opposed to a license of limited rights, was
14  very advantageous to Defendant.

15          This evidence, along with Paragraph 2 of the Agreement regarding the
16  necessity of disclosing improvements to NP-2, could easily convince a jury that an
17  important part of the Agreement was that Defendant be assigned all rights to NP-2,
18  including any improvements, due to its large potential value. Defendant invested a
19  significant amount of money into the Agreement and into creating an IP portfolio to
20  support its development efforts of NP-2, and their investment could be jeopardized
21  if Plaintiffs made an improvement that made the assigned technology either obsolete
22  or less valuable. Therefore, a reasonable jury could have found that when Dr. Flores
23  failed to conform to the improvement disclosure requirements, Plaintiffs breached
24  an important part of the contract, or materially breached the contract. In light of the
25  foregoing, the Court finds that the jury was presented with ample evidence that Dr.
26  Flores' breach was material and that the jury's finding of material breach was not
27  "contrary to the clear weight of the evidence." *See Molski*, 481 F.3d at 729. The
28  Court **DENIES** the motion on this ground.

### E.   Plaintiffs' Expert Was Properly Excluded

Finally, Plaintiffs suggest that "[t]he Court improperly excluded Plaintiffs' expert on issues solely within the jury's province and on a purported lack of qualifications also lacking in Defendants' expert as the Doctors demonstrated at trial." (Mot. New Trial 3.)  This issue has already been addressed, exhaustively, in this Court's order excluding Plaintiffs' expert which is incorporated into this order by reference.  (Order Granting Defendants' Motion to Exclude Mr. Pedersen's Testimony ("Daubert Order"), ECF No. 161.)   Mr. Pedersen's testimony was properly excluded because he failed to support his damage calculations with any sufficient or reliable data. (*Id.* 12-13.)  The Court did not make its decision lightly, but found that it was obligated to exclude the testimony in this particular case. (*Id.*) The Court will not reiterate all of its analysis here.

Plaintiffs continue to suggest that Mr. Pedersen was qualified to opine in this case, notwithstanding his lack of experience with the FDA. (Reply 7 ("The evidence demonstrated that the Defendants' expert was not any more qualified than the Doctors' expert and that the jury should have heard from both experts.").)  This argument fails because a plain reading of the Court's order reveals the Court did not disqualify Plaintiff's expert based on his lack of FDA experience.  (Daubert Order 4-5 ("[I]n light of the fact that the parties have not directly challenged Mr. Pedersen's expertise, the Court finds that it is more helpful to analyze Mr. Pedersen's actual opinions regarding damages instead of his qualifications.").)  Further, Plaintiffs were within their rights to challenge Defendant's expert, but never did.

Assuming the Court excluded Mr. Pedersen's testimony in error, which it did not, the error was harmless as he was only testifying to damages.  The jury found no liability, so Mr. Pedersen's testimony was irrelevant.   In light of the foregoing, the Court **DENIES** the motion on this ground.

//

//

– 13 –

9cv641

1    //

2    //

3    **IV.    CONCLUSION AND ORDER**

4           For the foregoing reasons, the motion for new trial is **DENIED**.

5           **IT IS SO ORDERED.**

6    DATED:  September 14, 2015

7    _____
     M. James Lorenz

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9cv641